UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

WILLIAM GONZALEZ, MILAGROS SIERRA,
JEREMY LUGO, and KASSANDRA CUASCUT,

                                Plaintiffs,

      -against-

THE CITY OF NEW YORK, a municipal entity;
Detective JUAN GOMEZ (Shield # 27475) in his
individual capacity; Police Officer ARIEL
EUSEBIO (Shield # 19648) in his individual
capacity; Police Officer EDMUNDO RIVERA
(Shield # 696) in his individual capacity; Captain
CAMPBELL in his individual capacity; and "JOHN
and/or JANE DOES" Nos. 1, 2, 3, etc. (whose
identity are unknown but who are known to be
personnel of the New York City Police Department),
all of whom are sued individually,

                                Defendants.
-------------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL
DEMANDED**

Index No.:  18-CV-7488

       Plaintiffs William Gonzalez, Milagros Sierra, Jeremy Lugo, and Kassandra Cuascut, by

their attorneys, Beldock Levine & Hoffman LLP, as and for their complaint against the

Defendants named above alleges as follows:

## PRELIMINARY STATEMENT

       1.     This is a civil rights action in which the Plaintiffs William Gonzalez, Milagros

Sierra, Jeremy Lugo, and Kassandra Cuascut ("Plaintiffs" collectively) seek relief for

Defendants' violations of their rights secured by 42 U.S.C. § 1983, the Fourth and Fourteenth

Amendments to the United States Constitution, and the Constitution and laws of the State of

New York.

2.      On May 19, 2017, at approximately 1:20 a.m., a BB gun was fired from a rooftop at 192nd Street and Aqueduct Avenue at a police car, causing damage to the roof and windows of the car but causing no injuries.  Although the police quickly obtained surveillance footage showing the perpetrators and arrested two of those individuals shortly thereafter, police officers maliciously and unlawfully arrested Milagros Sierra, Jeremy Lugo, and Kassandra Cuascut to punish the block where the shooting had occurred and to make an example of what would happen if the police were disrespected.  When William Gonzalez went to the 52nd Precinct to inquire why Ms. Sierra had been arrested, police officers from that precinct told Mr. Gonzalez that it was to teach the block a lesson.  The police officers further told Mr. Gonzalez that if he wanted them to stop punishing the block and release Ms. Sierra from custody, Mr. Gonzalez should provide them with a gun. Although the police had promised Mr. Gonzalez that he would not be arrested if he followed their instructions for providing them with a gun and although the gun Mr. Gonzalez provided them with was visibly and unmistakably broken and inoperable, Mr. Gonzalez was arrested and charged with gun possession felonies when he complied with their demand.  The false charges against Plaintiffs were eventually dismissed.

3.      Plaintiffs seeks (i) compensatory damages for loss of liberty, psychological and emotional distress, and other injuries caused by the illegal, unconstitutional, and conscience shocking actions of the Defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; (iii) costs and attorneys' fees; and (iv) such other and further relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of Plaintiffs' constitutional and civil rights.

2

5.      Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy

6.      Plaintiffs have complied with the requirements of New York General Municipal Law Section 50-i by making and serving a notice of claim on the Comptroller of the City of New within the time required by New York General Municipal Law Section 50-e.  More than thirty days have elapsed since the service of that notice, and no offer of settlement has been made.

7.      Plaintiffs have also submitted to hearings pursuant to New York General Municipal Law Section 50-h.

8.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York, the judicial district in which the claims arose.

## JURY DEMAND

9.      Pursuant to the Seventh Amendment of the United States Constitution, Plaintiffs request a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

10.     Plaintiff William Gonzalez is a citizen of the United States and at all times relevant to this action was a resident of Bronx County, City and State of New York.

11.     Plaintiff Milagros Sierra is a citizen of the United States and at all times relevant to this action was a resident of Bronx County, City and State of New York.

12.     Plaintiff Jeremy Lugo is a citizen of the United States and at all times relevant to this action was a resident of Bronx County, City and State of New York.

13.     Plaintiff Kassandra Cuascut is a citizen of the United States and at all times relevant to this action was a resident of Bronx County, City and State of New York.

3

14.     Defendant City Of New York ("City") is a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department and does maintain the New York City Police Department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

15.     Defendants Detective Juan Gomez (Shield # 27475) ("Detective Gomez"), Police Officer Ariel Eusebio ("P.O. Eusebio") (Shield # 119648), Police Officer Edmundo Rivera (Shield # 696) ("P.O. Rivera"), Captain Campbell, and Police Officers "John and/or Jane Does" Nos. 1, 2, 3, etc. ("Does") are NYPD police officers who unlawfully caused false criminal charges to be lodged against Plaintiffs.

16.     Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the City and/or the NYPD.

17.     At the times relevant herein, Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution and under equivalent New York State constitutional provisions, of which reasonable police officers in their respective circumstances would have known.

**STATEMENT OF FACTS**

**The May 19, 2017 shooting of a police car with a BB gun**

18.     At approximately 1:20 a.m. on May 19, 2017, a person on the rooftop of a building at Aqueduct Avenue and West 192nd Street in the Fordham Manor section of the Bronx, New York, fired several shots from a BB gun at a marked NYPD patrol car.

4

19.   The squad car's windows and roof were damaged, but nobody was hurt.

20.   The NYPD launched an investigation to catch the persons responsible for the shots being fired at the police car.

21.   Members of the NYPD determined the building from which the BB gun had been fired and obtained surveillance footage from that building.

22.   The surveillance footage revealed three young men and a young woman running down a stairwell of the building about half an hour after the police car had been shot at.  The police believed these were the people responsible for the shots fired at the police car.

23.   Police arrested two male Hispanics, aged twenty-one and eighteen, for the shooting later that day.  A third Hispanic male, aged sixteen, was taken into custody the following day.  A Hispanic female, aged thirteen, turned herself into the police approximately three days after the incident.

**The false arrests of Milagros Sierra, Jeremy Lugo, Kassandra Cuascut**

24.   On May 19, 2017, at approximately 5:00 p.m. Milagros Sierra, Jeremy Lugo, Kassandra Cuascut, and a few other friends were talking together on Aqueduct Avenue between 192nd Street and Kingsbridge Avenue.

25.   While Ms. Sierra, Mr. Lugo, Ms. Cuascut, and their friends were talking, several police vehicles pulled up to them.

26.   Without reasonable suspicion to believe that Ms. Sierra, Mr. Lugo, Ms. Cuascut, or their friends had engaged in any unlawful activities, several police officers, including Detective Gomez, P.O. Eusebio, Captain Campbell and Does exited the cars and rushed towards them while yelling at them to stop what they were doing.

27.    Without just cause, police officers forcibly handcuffed Mr. Lugo and began searching him.

28.    Ms. Cuascut asked the police officers why they were searching Mr. Lugo and told them to leave Mr. Lugo alone.

29.    Captain Campbell responded by calling Ms. Cuascut a "ratchet bitch" and forcibly placed Ms. Cuascut in handcuffs.

30.    Ms. Sierra was also placed in handcuffs.

31.    Detective Campbell exclaimed, "You think you can shoot a cop car and get away with it!"

32.    Upon information and belief, the police officers knew that Ms. Sierra, Mr. Lugo, Ms. Cuascut, and their other friends were not involved in the shooting of a police car with a BB gun that had occurred earlier that day.

33.    Ms. Sierra, Mr. Lugo, Ms. Cuascut, and their other friends did not look like the suspects who were seen on surveillance footage running down the stairwell from the roof after the police car had been hit.

34.    Upon information and belief, two of the males who had participated in shooting the police car had already been taken into custody and had no association with Ms. Sierra, Mr. Lugo, Ms. Cuascut, or their other friends other than that they lived in the same neighborhood.

35.    Ms. Sierra, Mr. Lugo, and Ms. Cuascut were eventually transported to the 52nd Precinct where they were searched, processed, and confined to holding cells for several hours.

36.    While Ms. Sierra, Mr. Lugo, and Ms. Cuascut were being detained in holding cells, one of the detectives who had participated in arresting them said, in sum and substance, that he knew that Ms. Sierra, Mr. Lugo, and Ms. Cuascut had not shot at the police car with a BB

6

gun, but that arresting them would get the point across to others that the police would not tolerate such conduct.

37.     Ms. Sierra was eventually released from custody at the 52nd Precinct with a Desk Appearance Ticket while Mr. Lugo and Ms. Cuascut were transferred to Bronx Central Booking.

### The false arrest of William Gonzalez

38.     At the time Ms. Sierra, Mr. Lugo, and Ms. Cuascut were seized by the police on Aqueduct Avenue, William Gonzalez was talking to a couple of friends a short distance away.

39.     Mr. Gonzalez observed Ms. Sierra, Mr. Lugo, and Ms. Cuascut being arrested and taken away by the police officers.

40.     Mr. Gonzalez called Ms. Sierra's partner, Eric Silverio, to let him know that Ms. Sierra had been arrested.

41.     Mr. Gonzalez did not know why Ms. Sierra had been arrested.

42.     Mr. Silverio and Mr. Gonzalez met up and went to the 52nd Precinct to find out why Ms. Sierra had been arrested.

43.     At the 52nd Precinct, Mr. Silverio and Mr. Gonzalez spoke to Detective Gomez and another detective named "Brandon."

44.     When Mr. Gonzalez and Mr. Silverio asked why Ms. Sierra had been arrested, Detective Gomez responded that a couple of kids had shot a police car with a BB gun and stated that if the people who lived there were not able to control their block, the police would control it for them.

45.     Detectives Gomez and Brandon told Mr. Gonzalez and Mr. Silverio, in sum and substance, if they wanted Ms. Sierra to be released and wanted the police to stop harassing the

7

people on Aqueduct Avenue, Mr. Gonzalez and Mr. Silverio would need to provide them with a gun.

46.     Detective Gomez said that there was a police "program" under which they could turn in guns without being arrested.

47.     Detective Gomez said that under this program, they could place the gun somewhere, call him to say where the gun had been placed, and that the gun would then be collected by the police and written up as a "found firearm" without anyone being arrested.

48.     Detectives Gomez and Brandon said they would release Ms. Sierra with a Desk Appearance Ticket and "stop the bullshit on Aqueduct" if Mr. Gonzalez and Mr. Silverio followed their instructions and provided them with a gun.

49.     Mr. Gonzalez asked if he could just bring a gun to the precinct and turn it in there.

50.     Detectives Gomez and Brandon told Mr. Gonzalez that he would be shot if he brought a gun to the precinct.

51.     Detectives Gomez and Brandon told Mr. Gonzalez to put the gun on a rooftop or in a garbage can and to call them and let him know once he had done so.

52.     Mr. Gonzalez had recently found a gun in the area of his apartment building where trash was collected.

53.     The gun Mr. Gonzalez had found was visibly and unquestionably inoperable: it had no ammunition, it had no clip to hold ammunition, it was visibly missing other essential pieces, and if you pulled the pistol slide the top of the gun came off instead of springing back into place.

54.     Mr. Gonzalez followed the instructions Detectives Gomez and Brandon had given him to get Ms. Sierra released and to get police officers to stop harassing people on his block.

8

55.     Mr. Gonzalez took the visibly inoperable gun in a plastic bag and placed it under a car near 204th Street and Rochambeau in the Bronx, New York.

56.     Mr. Gonzalez called Detective Gomez to let him know where he could pick up the gun.

57.     Detective Gomez thanked Mr. Gonzalez and told him he would be by to pick it up shortly.

58.     Mr. Gonzalez re-called Detective Gomez after some time had passed and Detective Gomez had not come by to pick up the gun.

59.     Detective Gomez told Mr. Gonzalez that he was making sure everything was alright and that he would be by soon.

60.     When more time went by and Detective Gomez still did not show up, Mr. Gonzalez re-called Detective Gomez, but Detective Gomez did not answer his phone.

61.     Mr. Gonzalez called Detective Gomez several more times without getting an answer.

62.     Eventually, Mr. Gonzalez went to pick up the visibly broken gun because he did not want to leave it where kids could find it.

63.     As Mr. Gonzalez approached the gun to pick it up, several police officers, including P.O. Rivera, exited an unmarked car, grabbed Mr. Gonzalez, and placed him in handcuffs.

64.     Mr. Gonzalez explained that he had arranged with Detective Gomez to drop off the gun for police pick-up and that he had been waiting for Detective Gomez who had told him he was coming by to pick up the gun.

9

65.     Mr. Gonzalez then had the police officers contact Detective Gomez and talk to him on the phone.

66.     Despite the promises Detectives Gomez and Brandon had made to Mr. Gonzalez and despite the fact that the gun Mr. Gonzalez had placed under a car was visibly and unquestionably inoperable, the police officers arrested Mr. Gonzalez.

67.     Mr. Gonzalez was charged with several counts of criminal possession of weapon.

68.     Mr. Gonzalez was so distraught over being arrested for serious gun charges that he began throwing up uncontrollably and had to be taken to Lincoln Hospital.

69.     Mr. Gonzalez was eventually taken to Bronx Central Booking.

### The prosecution of plaintiffs

**Milagros Sierra**

70.     Ms. Sierra was falsely charged with Criminal possession of marijuana in the fifth Degree, N.Y.P.L. 220.10(2) for allegedly possessing a preparation, compound, mixture, or substance containing marijuana of an aggregate weight of more than twenty-five grams.

71.     Ms. Sierra was released from the 52nd Precinct with a Desk Appearance Ticket at approximately 11:00 p.m. on May 19, 2017.

72.     Ms. Sierra was forced to return to Bronx County Criminal Court on July 7, 2017.

73.     Ms. Sierra's case was not heard on that day and Ms. Sierra was told she would be notified of a future court date.

74.     After months had passed without Ms. Sierra being notified of a future court date, Ms. Sierra was forced to go to the Bronx County District Attorney's Office to find out what was happening with the false charges against her.

75.     A member of the Bronx County District Attorney's Office informed Ms. Sierra that they were dismissing the charges against her in the interest of justice.

76.     The false charges against Ms. Sierra that had been filed without probable cause were subsequently dismissed.

**Jeremy Lugo**

77.     The false charges against Mr. Lugo that were filed without probable cause were dismissed at arraignment.

**Kassandra Cuascut**

78.     Ms. Cuascut was falsely charged with: Unlawfully possessing noxious material, N.Y.P.L. 270.05(2), for allegedly possessing noxious material under circumstances evincing an intent to use it or to cause it to be used to inflict physical injury upon or to cause annoyance to a person, or to damage property of another, or to disturb the public peace;  and two counts of Disorderly conduct, N.Y.P.L. 240.20(2) and (5), for making unreasonable noise and obstructing vehicular or pedestrian traffic with the intention of causing public inconvenience, annoyance or alarm, or recklessly creating a risk thereof.

79.     Ms. Cuascut was forced to return to Bronx County Criminal Court approximately three times as a result of the false charges against her.

80.     The false charges against Ms. Cuascut that were filed without probable cause were eventually dismissed upon motion by the Bronx County District Attorney's Office.

**William Gonzalez**

81.     Mr. Gonzalez was falsely charged with Criminal Possession of a weapon in the third and fourth degrees, N.Y.P.L. 265.02(3) and 265.01(2), and Criminal possession of a firearm.

11

82.     Mr. Gonzalez was remanded into custody on Rikers Island after arraignment because he was unable to afford the bail that had been set for him.

83.     After being detained on Rikers Island for approximately one week, Mr. Gonzalez was able to make bail and was released.

84.     Mr. Gonzalez was forced to return to Bronx County Criminal Court approximately two times as a result of the false charges against him.

85.     The false charges against Mr. Gonzalez that were filed without probable cause were eventually dismissed upon motion of the Bronx County District Attorney's Office.

## DAMAGES

86.     The unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad-faith acts and omissions of Defendants caused Plaintiffs to suffer false arrest, false imprisonment, malicious prosecution, pain and suffering, mental anguish, emotional and psychological pain, embarrassment, humiliation, and harm to their reputation.

87.     All of the acts and omissions committed by the Defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently, and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages.

## CAUSES OF ACTION

### FEDERAL CLAIMS

### COUNT I
**42 U.S.C. § 1983 4th and 14th Amendment False Arrest and Imprisonment**
*(Against Detective Gomez, P.O. Eusebio, P.O Rivera, Captain Campbell, and Does)*

88.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

89.    Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does deprived Plaintiffs of their clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution, including, but not limited to:

a.    freedom from arrest without probable cause;

b.    freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion or legal justification, of which wrongful detention Plaintiffs were aware and did not consent;

c.    freedom from the lodging of false charges against them by police officers and prosecutors, including, on information and belief, by some or all of the Individual Police Officer Defendants; and

d.    freedom from deprivation of liberty without due process of law.

90.    Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does intended to and did confine Plaintiffs for an extended period of time, of which confinement Plaintiffs were conscious of and did not consent to.  Plaintiffs' confinement was not otherwise privileged.

91.    Specifically, on May 19, 2017, when they knew probable cause did not exist to charge Plaintiffs with criminal activities, Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does, acting individually and in concert, arrested:

a.    William Gonzalez for Criminal Possession of a weapon in the third and fourth degrees, N.Y.P.L. 265.02(3) and 265.01(2), and Criminal possession of a firearm;

b.    Milagros Sierra for Criminal possession of marijuana in the fifth Degree, N.Y.P.L. 220.10(2);

c.    Jeremy Lugo for unknown charges; and

d.    Kassandra Cuascut for Unlawfully possessing noxious material, N.Y.P.L. 270.05(2), and two counts of Disorderly conduct, N.Y.P.L. 240.20(2) and (5).

92.    As a result of Defendants' actions, Plaintiffs were taken into custody, transported to the 52nd Precinct, for several hours.  While Ms. Sierra was released at the 52nd Precinct with a Desk Appearance Ticket, Mr. Gonzalez, Mr. Lugo, and Ms. Cuascut were taken to Bronx Central Booking where they were held in custody for several more hours.  While Mr. Lugo and Ms. Cuascut were released at Bronx Central Booking after being arraigned, Mr. Gonzalez was remanded to Rikers Island where he remained in custody for approximately one week.

93.    Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiffs' clearly established constitutional rights.  No reasonable officer in 2017 would have believed this conduct was lawful.

94.    As a direct and proximate result of these Defendants' actions, Plaintiffs were wrongly imprisoned and suffered the grievous and continuing damages and injuries set forth above.

## COUNT II
### 42 U.S.C. § 1983 4th and 14th Amendment Malicious Prosecution
*(Against Detective Gomez, P.O. Eusebio, P.O Rivera, Captain Campbell, and Does)*

95.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further allege as follows:

96.    Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does, with malice and knowing that probable cause did not exist to arrest Plaintiffs and prosecute them for the aforementioned criminal acts, acting individually and in concert caused Plaintiffs William Gonzalez, Milagros Sierra, and Kassandra Cuascut to be arrested, charged, and prosecuted for the aforementioned crimes, thereby violating Mr. Gonzalez's, Ms. Sierra's, and Ms. Cuascut's

clearly established right, under the Fourth and Fourteenth Amendments of the United States Constitution to be free of unreasonable searches and seizures.

97.    Specifically, these Defendants, acting individually and in concert, fabricated evidence and intentionally withheld from and misrepresented to prosecutors exculpatory facts that vitiated probable cause against Mr. Gonzalez, Ms. Sierra, and Ms. Cuascut, including but not limited to the fact that the police had fabricated inculpatory evidence and withheld exculpatory and impeachment evidence.

98.    These Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Gonzalez's, Ms. Sierra's, and Ms. Cuascut's clearly established constitutional rights.    No reasonable officer in 2017 would have believed this conduct was lawful.

99.    Mr. Gonzalez is completely innocent of Criminal Possession of a weapon in the third and fourth degrees, N.Y.P.L. 265.02(3) and 265.01(2), and Criminal possession of a firearm. The prosecution terminated in Mr. Gonzalez's favor when the criminal charges against him were dismissed.

100.    Ms. Sierra is completely innocent of Criminal possession of marijuana in the fifth Degree, N.Y.P.L. 220.10(2). The prosecution finally terminated in Ms. Sierra's favor when the criminal charges against her were dismissed.

101.    Ms. Cuascut is completely innocent of Unlawfully possessing noxious material, N.Y.P.L. 270.05(2), and Disorderly conduct, N.Y.P.L. 240.20(2) and (5). The prosecution finally terminated in Ms. Cuascut's favor when the criminal charges against her were dismissed.

102.    As a direct and proximate result of these Defendants' actions, Mr. Gonzalez, Ms. Sierra, and Ms. Cuascut were wrongly imprisoned and maliciously prosecuted and suffered the

15

grievous and continuing damages and injuries set forth above.

## COUNT III
**42 U.S.C. § 1983 14th Amendment Denial of a Fair Trial by Fabricating Evidence**
*(Against Detective Gomez, P.O. Eusebio, P.O Rivera, Captain Campbell, and Does)*

103.    Plaintiffs hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

104.    Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does, acting individually and in concert, fabricated probable cause and detained and initiated criminal proceedings against Plaintiffs based on the probable cause they had fabricated.

105.    The false and fabricated charges denied Plaintiffs of the right to a fair trial or a hearing at their arraignments and during repeated court appearances.  Plaintiffs William Gonzalez, Milagros Sierra, and Kassandra Cuascut were forced to appear in court because of the false charges and their failure to appear would have resulted in warrants being issued for their arrest.

106.    The false statements by Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does restricted Plaintiffs' freedom of movement because the false statements were forwarded to the District Attorney's Office which caused Plaintiffs to be prosecuted.

107.    Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiffs' clearly established constitutional rights.  No reasonable police officer in 2017 would have believed this conduct was lawful.

108.    All charges against Plaintiffs were dismissed.

109.    As a direct and proximate result of Defendants Detective Gomez's, P.O. Eusebio's,

P.O. Rivera's, Captain Campbell's, and Does' actions, Plaintiffs were falsely arrested and imprisoned and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT IV**
**42 U.S.C. § 1983 Supervisory Liability**
*(Against Captain Campbell)*

110.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further alleges as follows:

111.    Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, and Does acted with impunity in an environment in which they were not adequately trained, supervised, or disciplined by Defendant Captain Campbell and other supervisors, in this case and as a matter of practice.

112.    Defendant Captain Campbell and other supervisors acted with gross negligence, recklessness, and/or deliberate indifference to the constitutional rights of citizens by failing to provide adequate training, supervision, and discipline of the Defendant Police Officers, and thereby caused Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, and Does to deprive Plaintiffs of their clearly established constitutional rights, including their right to be free from unreasonable seizures, false arrest, false imprisonment, and deprivation of liberty without due process of law.

113.    Had Defendant Captain Campbell and other supervisors not provided grossly inadequate training, supervision, and discipline of Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, and Does, these Defendants would not have unreasonably interfered with Plaintiffs' constitutional rights by intentionally and maliciously causing Plaintiffs to be falsely arrested and imprisoned without probable cause. Defendant Captain Campbell and other supervisors were directly involved in the investigation of Plaintiffs and directly supervised the specific investigative acts taken by Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, and Does in this case.

114.    The grossly negligent, reckless, and/or deliberately indifferent conduct of

Defendant Captain Campbell and other supervisors under color of state law violated their clearly established duty, in 2017, to supervise Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, and Does. No reasonable police supervisor in 2017 would have believed that grossly negligent, reckless, and/or deliberately indifferent supervision in the face of actual or constructive notice of misconduct by their subordinate officers was lawful.

115.    All charges against Plaintiffs were dismissed.

116.    As a direct and proximate result of these Defendant Captain Campbell's actions, Plaintiffs suffered the grievous and continuing damages and injuries set forth above.

## STATE LAW CLAIMS

### COUNT V
**False Arrest**
*(Against Detective Gomez, P.O. Eusebio, P.O Rivera, Captain Campbell, and Does)*

117.    Plaintiffs hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

118.    Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does intended to and did confine Plaintiffs for an extended period of time, of which confinement Plaintiffs were conscious of and did not consent to. Plaintiffs' confinement was not otherwise privileged.

119.    Specifically, on May 19, 2017, when they knew probable cause did not exist to charge Plaintiffs with criminal activities, Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does, acting individually and in concert, arrested:

   a. William Gonzalez for Criminal Possession of a weapon in the third and fourth degrees, N.Y.P.L. 265.02(3) and 265.01(2), and Criminal possession of a firearm;

   b. Milagros Sierra for Criminal possession of marijuana in the fifth Degree, N.Y.P.L. 220.10(2);

18

c.  Jeremy Lugo for unknown charges; and

d.  Kassandra Cuascut for Unlawfully possessing noxious material, N.Y.P.L. 270.05(2), and two counts of Disorderly conduct, N.Y.P.L. 240.20(2) and (5).

120.  Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiffs' clearly established constitutional rights.  No reasonable officer in 2017 would have believed this conduct was lawful.

121.  As a direct and proximate result of these Defendants' actions, Plaintiffs were wrongly imprisoned and suffered the other grievous and continuing damages and injuries set forth above.

## COUNT VI
### Malicious Prosecution
*(Against Detective Gomez, P.O. Eusebio, P.O Rivera, Captain Campbell, and Does)*

122.  Plaintiffs hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

123.  Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does, through the foregoing acts, maliciously commenced a criminal proceeding against Plaintiffs William Gonzalez, Milagros Sierra, and Kassandra Cuascut, which ended in their favor, without probable cause to believe those Plaintiffs were guilty of the crimes charged.

124.  Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiffs' clearly established constitutional rights.  No reasonable officer in 2017 would have believed this conduct was lawful.

125.  As a direct and proximate result of these Defendants' actions, Plaintiffs were wrongly imprisoned and suffered the other grievous and continuing damages and injuries set forth

above.

## COUNT VII
### Intentional Infliction of Emotional Distress
*(Against Detective Gomez, P.O. Eusebio, P.O Rivera, Captain Campbell, and Does)*

126.    Plaintiffs hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

127.    Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does, through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused Plaintiffs to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

128.    As a direct and proximate result of these Defendants' actions, Plaintiffs were wrongly imprisoned and suffered the other grievous and continuing damages and injuries set forth above.

## COUNT VIII
### State Law Negligence
*(Against Detective Gomez, P.O. Eusebio, P.O Rivera, Captain Campbell, and Does)*

129.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further alleges as follows:

130.    Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does owed Plaintiffs a duty of care, including the duty to exercise due care in the course of their duties as NYPD officers and the duty to protect citizens from the intentional misconduct of other NYPD officers.

131.    Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does, by the foregoing acts, negligently failed to use due care in the performance of their duties in

that they failed to perform their duties with the degree of care that a reasonably prudent and careful officer would have used under similar circumstances.

132.    All of these acts were performed without any negligence on the part of Plaintiffs and were the proximate cause of injuries to Plaintiffs.

## COUNT IX
### *Respondeat Superior* Claim
*(Against City of New York)*

133.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further alleges as follows:

134.    At all times relevant to this Complaint, Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does acted as agents of the City of New York, in furtherance of the business, including law enforcement functions, of the City of New York, and within the scope of their employment or agency with the City of New York.

135.    The conduct by which the NYPD Defendants committed the torts of unlawful seizure, false arrest, intentional infliction of emotional distress, and negligence was not undertaken for the NYPD Defendants' personal motives, but rather was undertaken while the NYPD Defendants were on duty, carrying out their routine investigative functions as detectives.

136.    Under the doctrine of *respondeat superior*, the City of New York is liable for their agents' state law torts of malicious prosecution, intentional, reckless or negligent infliction of emotional distress, and negligence.

## COUNT X
### New York State Constitution
*(Against Detective Gomez, P.O. Eusebio, P.O Rivera, Captain Campbell, and Does)*

137.    Plaintiffs hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

21

138.    The conduct of Defendants Detective Gomez, P.O. Eusebio, P.O. Rivera, Captain Campbell, and Does described above, also violated Plaintiffs' rights under the New York State Constitution, Article I, §§ 6 and 12, to due process of law and to be free from unreasonable seizures.

139.    As a direct and proximate result of these Defendants' actions, Plaintiffs' suffered the grievous and continuing damages and injuries set forth above.

140.    Defendant City of New York is liable under *respondeat superior* for the actions of its employees within the scope of their employment.

**WHEREFORE**, Plaintiffs William Gonzalez, Milagros Sierra, Jeremy Lugo, and Kassandra Cuascut pray as follows:

(a)    That the Court award compensatory damages to Plaintiffs and against the Defendants, jointly and severally, in an amount to be determined at trial;

(b)    That the Court award punitive damages to Plaintiffs against all individual Defendants, in an amount to be determined at trial, that will deter such conduct by Defendants in the future;

(c)    For a trial by jury;

(d)    For pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

(e)    For any and all other relief to which they may be entitled.

Dated: New York, New York
           August 16, 2018

/s/Marc A. Cannan
Marc A. Cannan
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, 26th Floor
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiffs*

22